This case turns on the all elements rule. Every claim of the 973 patent requires a natural time lag. However, the board failed to identify where in the prior art a natural time lag with a random transmission occurred. And because this limitation is missing from the prior art, obviousness fails and the case should be reversed. Doesn't that depend on what kind of a natural time lag we're looking for? Well, the board construed natural time lag, your honor, and the board was specific in its construction. Right, I understand that. But what you're doing, I'm looking at the claim, page 25 in the record, a natural time lag between various internal clocks. If I'm not mistaken, you're rewriting that claim language to say a natural time lag within and between. That's what the construction by the board requires and the construction is based on the specification. Why is that so? So specifically, the board's construction says automatically and randomly inducing time shifting of transmission from the clock. And if you look at the specification at 824 column 2, the specification says, by virtue of this natural time lag, that's at 17, it says it automatically time shifts. I'm sorry, I'm at 17 through 24 that talks about. You're in a column? Yes, column 2, page 24. 17? Yes. And it goes through 24. You're talking about the internal clocks in the wheel? Yes, your honor. And at 20, it says. There's no doubt that embodiment in the specification is talking about variations within the clocks. But the claim language talks about natural time lag between the clocks, not within the clocks. And the natural time lag, as defined by the board, based on the specification, requires a randomness in transmission. So there can be a randomness in transmission between the internal clocks for each wheel without necessarily having a variation within the clocks. Take a look, your honor, if you will. But you can have the variation between the clocks without there necessarily being a variation within the clocks. I don't think it would be random, your honor. Your honor, if the variation within the clocks was known, then the pattern between the clocks would also be known. Because of that, we know that the variation within the clocks has to also be random. But we also know that from the specification at column 3, specifically lines 32 through 43, and more specifically, line 35, as figure 3 shows. But you're right. What you think the claim interpretation by the board meant, how could they have missed the fact that the prior art doesn't teach randomness within? Your honor? I mean, how could? They didn't. You didn't frame this argument. I mean, you first of all, I think, would be arguing why it is you haven't waived this. Because that's the argument from your counsel, your adversary. Clearly, the board didn't understand the argument you're presenting to us now. Your honor. But they couldn't have come to the conclusion they did on the art. Your honor, there's no waiver because we presented the failure to identify a prima facie case from the beginning of these proceedings. And you can find that. Your honor, where in your presentation to the board can you tell me that you were clearly arguing that what this claim meant, language, even though the claim language reads a natural time lag between, it should be read as a time lag within. We're not changing the claim language, your honor. We're focusing on the construction of the natural time lag. Does the claim say anything about a natural time lag within a clock? Through? Yes or no? Yes. The claim language, the words of the claim, natural time lag between various internal clocks. That means there's an internal clock here and there's a time lag between the two of them. And that's correct. But the board's construction, which is right out of the spec, shows that the natural time lag that occurs between the clocks is the result of the random transmission from each clock. And that is how you get the natural time lag in the clocks that causes the randomness between the clocks. And that's where the prior art is lacking. That's as a result of. But as I'm saying to you, the broadest reasonable interpretation of the claim would be that all you care about is the variation between the clocks. But the broadest reasonable interpretation. Right? If you were in litigation and the patent had survived and you got an adversary out there who doesn't have a variation within the clocks but has a variation between the clocks, you'd So the board is saying that's the broadest reasonable interpretation of the claim. And within the broadest reasonable, there's no art out there that teaches. There's art out there that clearly teaches the variation between the clocks, which is why you've got the result you've got. Your Honor. You can only prevail if I put the variation within the clocks into the claim and then ask if there's prior art that reads on that. Your Honor, we disagree with you there, but also we can prevail even under that interpretation, which we don't believe is correct. But under that interpretation, there is no motivation to combine because for three reasons. First, there's no prima facie case. Second, and more towards your point, the Tire Pressure Monitor references, specifically Derbyshire and Bailey, teach a way from using a Bowers-like solution. They teach specifically towards precision. Even when they disclose something that's less precise, they teach that there's a requirement to correct for the tolerance every single time. So, for example, if you look at A50, column 14, lines 44 through 47, it says the RC oscillator requires Manchester coding. And the Manchester coding corrects for the inaccuracy caused by the RC oscillator. In addition, at A53, column 20, lines 24 to 26, it says, as long as the reduction in accuracy is compensated for, you can use a less accurate clock. So everything about Derbyshire and Bailey talks about precision and it does not take advantage of the natural time lag. In fact, if you were to try to take advantage of the natural time lag, Derbyshire specifically says that it would correct for that because it doesn't want that to work. It doesn't think that will work. And that's a teaching away, Your Honor, about as clear as it can get. Third, assuming you combine Bowers with Derbyshire, and I think this is similar to the teaching away, that tolerance has to be accounted for somewhere in the system. And the rejection doesn't tell you how to accommodate for that tolerance. There's a receiver that won't know what it's receiving. You can see that at A51, 45 through 50. It's not clear what you would get, but it wouldn't work and it wouldn't be a tire pressure monitoring system with a natural time lag. Your Honor, I also direct you to look at Bowers at A66, Column 8, Lines 22 through 26.  Bowers discloses that the non-transmission interval is fixed for a particular device, and that's different from the specification of the 973 patent, which discloses that the non-transmission interval is random for a particular device. Can I explain it with an example? Would that help? Sure. Thank you. For example, if you consider a dart board, and under Bowers, one player throws a dart, and he wants to hit the bullseye, but instead he hits a 10. The fact that he hit that 10 may be a random manufacturing tolerance as disclosed in Bowers, but he's going to throw it again and he's going to hit a 10, he's going to throw it again and he's going to hit a 10. Every time, he'll hit a 10. The next player comes along, she throws, she misses the bullseye, she hits a 5. Every time under Bowers, she hits a 5. By contrast, in the 973 disclosure, one player throws, he misses the bullseye, he hits a 10. The next time he hits a 7 and a 5 and a 3, he never hits the same or rarely hits the same number again. It's random. Player number 2 gets up, she hits a 5. But every time she throws, she hits another number as well. It's random. That's the difference disclosed in Bowers, I mean disclosed in the 973 patent, that none of the prior art discloses. That's the randomness. Why don't you save your rebuttal? Let's hear from the government. Yes. May it please the court. This is actually a textbook case where a waiver should apply. Their argument now is that there's basically two time lags. There's a time lag between devices and there's also a time lag within a single device. And before the board, they never argued that there was a time lag within a single device. But the board's language was kind of confusing or a bit inaccurate or inarticulate, correct? No, Your Honor, I don't think so. The board said, introducing the context for its claim construction, it says, quote, as in connection with internal clocks of a wheeled unit. Can I ask where you're quoting from, Your Honor? I think it's J.A.'s. It's in the board opinion. So, Your Honor, if we go to A5, and this is where the board quoted from their initial decision to institute trial, they say, and this is where they use the word random, and I'm in the block quote, they say, the 973 patent sets forth that natural time lag of the transmission of data from the individual clock components of each wheel arises due to substantial tolerance. And then later they say, by randomly time shifting each frame transmission from a wheel unit relative to other wheel units. So when they introduced this word random, they were speaking of the time shifting being random as between different wheel units. So, by way of example, if I had a bucket and I filled it with 100 clocks, and I picked out any one single clock, I don't know beforehand if that clock is going to run a millisecond fast or if it's going to run a millisecond slow. That's the randomness. And that's the randomness that comports with the claim language. And if we go to the claim... Miss, Miss, Miss. Because Annie's argument was, in essence, as I understood to me, was that you can't have randomness as within the definition supplied by the board unless you have variations within the clock. Because I said to her, well, come on, can't you have randomness between wheels even if your internal clocks are all consistent, they're not at variance? And she said no, but she didn't say why. Well, the board says right here, when they use the word random, they're talking about random as between clocks. And that's exactly the way that Bowers uses it. And if we go to Bowers at A56 in the abstract, Bowers says that the non-transmission intervals are fixed for a given tag that are random between tags due to manufacturing tolerances. So, it's the exact same type of randomness. What I was trying to get at is, Miss Annie, I didn't come back and nail down the point. She can get up on rebuttal if she disagrees. It seems to me the case turns on whether or not, under the definition by the PTO, can you achieve randomness simply by having variations between the clocks, between the wheels, as opposed to... And the answer to that... If the answer is yes... Yes. Then she's going to lose, from my perspective, if she can get up on rebuttal and say why. Yes. So, the way the board used the word random, they were talking about randomness as between clocks. Again, if I pick any one clock out of a bucket, I don't know. But come back now. Doesn't the specification teach that at least one way, in fact the only embodiment, the way to achieve randomness between the clocks is to establish randomness within the clocks? Your Honor, this brings me back to my waiver point. No, but I mean, if we're looking at... Let's assume that this was an infringement case and I was construing the claim. And I'd have the language here on the claim that says, oh, the randomness is between the clocks. Right? And then I look at the specification and say, well, what's the specification teach? And it teaches that the randomness between the clocks is achieved by having randomness within the clocks. Right? Your Honor, I can't answer the question. Well, you can read the patent probably better than I can. Right? But doesn't the patent or all the examples in the patent teach that there is randomness within the clocks? Well, Your Honor, again, for instance, if you look at Figure 2 or you look at column 3 at line... This is at page 25, I believe, starting at line 33. It says, this has the consequence of randomly time-shifting the transmissions of the first frames of the message but also of the following two frames. So if I had a clock on my desk and I knew that clock was five minutes fast and I had a conference call at 1 o'clock, I had a conference call at 2 o'clock, and a conference call at 3 o'clock, I know that I'm going to be five minutes early for my first conference call. I know I'm going to be five minutes early for my second conference call. And I know I'm going to be five minutes early for my third conference call. My point is that I think... We're not connecting. What I'm getting at is that the language of the claim itself talks about a natural time lag between the clocks, not within the clocks. But when you look at the specification to say, well, how do you get, how do you manage to achieve a time lag between the clocks, the specification is teaching you do it by having each of the internal clocks themselves having variation. It's very... Your Honor, I don't think you have to read the patent that way. I think... I'm just trying to have an adult conversation about what the spec teaches about how do you achieve, how do you achieve the claim result. Okay. For instance, if you turn on the engine, and one clock... Let's say that all the clocks are set to transmit at 60 seconds. Just by manufacturing variance or tolerance, one of the clocks is always going to run one second fast. One of the clocks is always going to run one second slow. So even if they're all set to transmit at 60 seconds, one is going to transmit at 59 milliseconds. I understand how you can achieve the variation, the time lag between the various clocks, and not having substantial variation within the clocks. But when I read the specification, it seemed to me to say, well, the way to get the result that's clean is to tinker with each individual clock to make certain that it has this variation you're talking about, manufacturing tolerance. And, Your Honor, my point is that that is a factual question the board should have answered in the first place, that the patent owner should have asked the board to answer in the first place. Because after the board instituted trial, the patent owner had two critical pieces of information. The patent owner knew the board's claim construction, and the patent owner knew that the board was using Bowers to teach this natural time lag. And if we go to A220, and this is in the decision to institute, under the section C, obviousness, under the section number 1, Derbyshire, Bailey, and Bowers, a few lines down, the board says, it is readily apparent that a tolerance of plus or minus 20% for a clock circuit squarely encompasses a suitable, quote, natural time lag, close quote, as between a plurality of such clock components when transmitting data. Indeed, we do not discern that there is any dispute in this regard. After the board instituted trial, the patent owner had one shot to come forward with all of their best arguments and all of their best evidence. At this point, the patent owner should have said, no, no, no, you don't understand Bowers. You don't understand our invention. Let me tell you what the specification says. Let me tell you what figure 2 says. Let me tell you what figure 3 says. Let me show you how Bowers is different. And they never did that. And we can see that in their patent owner response. For instance, if you look at section B, which starts at A254 and goes through A256, they never talked about this natural time lag being not only between devices but within one clock. And also in the summary of the argument. And this is at A257 and A258. Again, they never raised this argument. So the board should have been able to make all these factual determinations, and they never were given that opportunity. But even if, even if you have... Now, we'd have a different case, wouldn't we, if the claim actually read a natural time lag within and between? We might have a different case. But I agree with you, the claim is clear that it's between devices. Bowers clearly teaches that. But Bowers also teaches a time lag within one clock. And if I may explain. If we go to Bowers at A66, column 8, starting at line 43. 66, column 8, line 43? Yes. In addition? Yes. Bowers says, in addition, even should two or more devices initially transmit their memory data at the same time or at overlapping times, because the length of the non-transmission interval is much greater than the length of the transmission interval, the non-transmission interval among the devices should vary enough such that the next or subsequent transmission interval for each device will likely occur at a different instant. That's within a clock. That's within a clock. And this is clearly shown in the drawings of Bowers. And if we go to A60, what this drawing is showing us is there are four. Which drawing was it? Figure 4B. 4B. So in this drawing. It looks like Greek to me. How does it teach? Sure. So there are four tags. Tag 1, tag 2, tag 3, tag 4. Okay. The next line says read. That's telling us that the computer is reading the tag. And the final line says time. And that's just points in time. So T1 is the first point in time, T2, T3, et cetera. Okay. So in the first T1, you see that tag 1 and tag 2 transmit at the same time. And so if you look at the read line, you'll see that there's an X. That means that because the two transmissions are simultaneous, the computer cannot read it. There was data collision at that point, T1. Now, because there's variation within a single clock, when you go to T4, which is the next transmission of tag 1 and tag 2, you'll see that tag 2 is slowly starting to desynchronize with tag 1. You see that it's a little bit to the right of tag 1 at time 4. So you see that there's some variation, and now tag 4 is actually transmitting a little slower than tag 1. If we go all the way down to the third set of lines, all the way over to the right at T13 and T14, now there's so much variation between tag 1 and tag 2 that they're transmitting at completely different times. So if we look at the read line, which is 1, 2, 3, the fifth line down, you'll see that the computer was able to read tag 1. It was able to read tag 2 because they're completely desynchronized at this point. So, if we use the dartboard analogy, it's not true that every time in Bowers, when you throw that dart, that you're always going to get 10, or you're always going to get 5. The first time you might get 10, the second time you might get 10, but the third time you might get 9, the fourth time you might get 8, and so forth. So if there's a variation within the clock in the 973 patents, there's also a variation within the clock in the Bowers patents. Bowers is dead on to this patent, and it teaches directly, it teaches toward the invention, and we can see that at column 10, this is at A67, starting at line 16, and Bowers says, it will also be apparent to those of skill in the arts that the device can be used in many other commercial applications. Further down, he says, it will be recognized by those of ordinary skill in the arts that the inventive concepts disclosed are applicable to other devices, which would benefit from the output protocol disclosed herein. Bowers is all about preventing data collision. It was known in the art that these higher pressure monitoring systems had a problem with data collision, and Bowers is teaching, hey, if you want to avoid data collision, use the protocol that I describe here, and that's the motivation to combine, and that's the teaching directly toward the invention. If there are no further questions, thank you. Your Honor, I want to look at the record at A220 that counsel directed you to. If you look at that sentence that talks about where the board is talking on its decision to institute a tolerance of plus or minus 20%, you know, that might encompass a natural time, but there are many different kinds of tolerances, and there's no evidence to assume that Bowers' fixed manufacturing tolerances are the same as the 973's natural time lag, and the specifications actually disclose the opposite. Bowers' manufacturing tolerance is fixed, as we've talked about it, A66, column 8, lines 22 to 26. And we went through the record. Do you disagree with Ms. Stewart on her reading of Bowers to show variation within a clock? I do, Your Honor. I think she's confusing. Do you want to run us through the example? I do, Your Honor. I think she's confusing variation with random. The variation is a manufacturing tolerance, as Bowers said. If you look at column 8, specifically. Help us out. Okay. Look at column 8, line 21. What page are you looking at? A66. 66. A predetermined tolerance level, such as plus or minus 20% tolerance, that although the non-transmission interval is a fixed length for a particular device, the length of the non-transmission interval varies. It's not random. It varies among a plurality of devices due solely because of the manufacturing tolerance, which is fixed. And we know it's fixed because the non-transmission interval that includes the manufacturing tolerance is fixed. A variation that is fixed is not a random transmission. In addition, the solicitor's direction to the 973 patent at column 3, which is on A25, confirms this point. Column 3, line 33. Is it on 25? A25. Column 3. Column 3, line 33. It says, this has the consequence of randomly time-shifting the transmission from the first frame of a message, but also from the following two frames. This is a message within the wheel unit, not in different wheel units. So the specification is clear. But finally, I want to also make sure that it's clear that even if you combine these, you don't get the claimed invention because Derbyshire teaches precision. And every time you have to put in a less precise clock, Derbyshire teaches that you have to accommodate for that lack of precision. In fact, if you put in a less precise clock, as the Board suggested, it wouldn't work because the receiver in Derbyshire wouldn't know what it was getting. It's looking for a precise transmission. Thank you, Your Honors. I see my time has expired. Thank you.